(C.D. 3524)

MUTUAL SUPPLY CO. ET AL *v.* UNITED STATES

United States Customs Court, Third Division

(Decided July 25, 1968)

*Lawrence & Tuttle* (*George R. Tuttle, Jr.,* and *Robert Glenn White* of counsel) for the plaintiffs.

*Edwin L. Weisl, Jr.,* Assistant Attorney General (*James S. O'Kelly* and *Bernard J. Babb,* trial attorneys), for the defendant.

Before RICHARDSON and LANDIS, Judges

RICHARDSON, Judge: The merchandise of these 13 protests consolidated for trial consists of vegetables canned in liquid, identified as Mirin Zuke, Tokyo Zuke, Asahi Narazuke, Fukujin Zuke, and Takuwan Zuke, and imported from Japan on various dates in 1951, 1952,

1953, 1954 and 1955. The collectors classified this merchandise as vegetables, prepared or preserved, under paragraph 775 of the Tariff Act of 1930, and assessed duty at the rate of 35 percent ad valorem. Plaintiffs claim the merchandise is properly classifiable as vegetables, if pickled, under paragraph 775 of said act as modified and dutiable at the rate of 17½ percent ad valorem.

The statutes involved are:

Paragraph 775, Tariff Act of 1930—

Vegetables (including horseradish), if cut, sliced, or otherwise reduced in size, or if reduced to flour, or if parched or roasted, or if pickled, or packed in salt, brine, oil, or prepared or preserved in any other way and not specially provided for; . . . 35 percent ad valorem; . . . .

Paragraph 775, as modified by the Annecy Protocol of Terms of Accession to the General Agreement on Tariffs and Trade, 84 Treas. Dec. 403, T.D. 52373—

Vegetables (including horseradish), if pickled, or packed in salt or brine and not specially provided for (except cucumbers and onions) _____ 17½% ad val.

During trial protest 273629–K was abandoned and the claim in the remaining protests was limited to pickled vegetables.

On plaintiffs' motion, the record in *Mutual Supply Co.* v. *United States*, 44 Cust. Ct. 75, C.D. 2155, was incorporated and on defendant's motion, the record in *Chong Kee Jan Co., Inc.* v. *United States*, 53 Cust. Ct. 70, C.D. 2476, was also incorporated.

In the instant case, plaintiffs introduced the testimony of three witnesses and three illustrative exhibits, while defendant introduced the testimony of one witness and one exhibit.

Plaintiffs' first witness, Sumu Togasaki, from Mutual Supply Co., a party-plaintiff, testified he has been in the import trade for 37 years. He has personal knowledge of the use of the merchandise at bar, having eaten it, sold it and recommended it. He testified the vegetables, usually radishes, are dehydrated for a few days, then put in a large container with salt under a heavy weight. After 2 or 3 days, it is taken out and sliced up. Soy sauce is added and the product is canned. He had observed this processing when he visited Japan in 1930 and in his opinion, based on taste, there has been no change in the product since that time. He had not observed the process from beginning to end while in Japan, merely various stages of the process. However, during World War II, he had made Tokyo Zuke in detention centers in Arizona and Utah by the process he described having observed in Japan, with a resulting product having the same taste as the imported merchandise.

Kazuo Kariya, who testified in the incorporated record in C.D. 2155, has imported various oriental products, including merchandise similar to that at bar, since 1950. To his knowledge the product has not changed since the merchandise, the subject of C.D. 2155, was imported.

Max Ringel, a customs line examiner at Los Angeles, was called as a witness by plaintiffs. Ringel is an examiner in the food line. As part of his duties he had signed stipulations stating that merchandise similar to the merchandise at bar is classifiable as pickled vegetables. Mr. Ringel was not the examiner who examined the merchandise which was the subject of C.D. 2155 and had relied soley on the product name when he signed stipulations attesting to the classifiable nature of such Japanese products under the generic name "Zuke" as pickled vegetables.

Dr. Maynard A. Joslyn, defendant's sole witness, testified that in his opinion a pickled vegetable is "a vegetable which has undergone a lactic acid fermentation in the presence of a salt solution for the purpose of preparing it for subsequent processing or for the purpose of preserving the product as a pickled product in the form in which it can be served for table use." Dr. Joslyn testified that a vinegar pickled vegetable is not in the commercially accepted terminology of the vegetable that has undergone lactic acid fermentation.

Dr. Joslyn's testimony on the various types of pickles, distinguished between the two types of demands for texture in pickled vegetables, one being a crisp pickle and the other an acceptance for the soft and modified texture which occurs as a result of the bacterial fermentation.

In specific reference to the merchandise in question Dr. Joslyn testified:

In Japan the Zuke, which is a generic term for Japanese pickled [sic], may be prepared by lactic acid fermentation, or they may be prepared as we would prepare canned cucumbers in brine, or as we would prepare cauliflower under the same condition, by preparing the tissue for the absorption of a salted sweetened soy sauce. The vegetable is prepared usually by treatment with dry salt, by pressing, as the case may be. This preparation is necessary in order to allow the flavoring ingredient in which the vegetable is steeped to penetrate into the tissues and give a product that is uniform in flavor with this ingredient, which still retains the crisp texture, and this is the widely accepted and serves as a typical Japanese pickled vegetable, but in my opinion, would not constitute a pickled vegetable in the American practice.

In the incorporated record in C.D. 2155 the issue was whether certain vegetable preparations were pickled, among them being Tokyo Zuke, Fukujin Zuke, and Takuwan Zuke. Plaintiffs introduced evidence of the chemical analysis of the specimen vegetables. The Curtis & Tompkins, Ltd., report described the fixed acid in the vegetables as

lactic acid. Mr. Marcus Weinberg, who performed the chemical analysis of the specimen vegetables, had 28 years experience in analyzing vegetables and foods. In his opinion, the Tokyo Zuke and Fukujin Zuke were pickled by reason of the added salt and the fixed acid in the vegetables.

Dr. William Vere Cruess, plaintiffs' expert witness from the Ford Technology Department, College of Agriculture, University of California, in the incorporated case C.D. 2155, testified that in his opinion the vegetables in the products Tokyo Zuke and Fukujin Zuke had been pickled prior to canning. He based his opinion on the Curtis & Tompkins, Ltd., reports in evidence which show lactic acid present and the taste which led him to testify the products had been pickled prior to canning rather than having lactic acid added in the canning process.

Although the expert testimony and analysis did not extend to the Takuwan Zuke, plaintiffs' witness Togasaki testified to similar processing for the Takuwan Zuke. On the record the court in the *Mutual Supply Co.* case, C.D. 2155, sustained the protests as to Tokyo Zuke, Fukujin Zuke, and Takuwan Zuke.

In defendant's incorporated record in the *Chong Kee Jan Co.* case, C.D. 2476, the involved vegetables were Chinese vegetables classified as prepared or preserved in some way other than by pickling or packing in salt, brine or oil. The claim prosecuted was that the vegetables were properly classifiable as vegetables, pickled or packed in salt. The only evidence of the processing of the vegetables in Hong Kong was in the testimony of Mr. Hing Tin Siu, whose observation was limited to a two or three hour visit to the processing plant. Most of his testimony regarding the actual processing was what he had been told or had guessed.

In C.D. 2476, the plaintiff's expert witness, Dr. Reese Haskell Vaughn, professor of food science and technology at the University of California, testified that based solely on the report of government analysis it would be impossible to determine whether or not the vegetables in question were pickled in lactic acid. However, he was of the opinion that said vegetables were pickled. Dr. Vaughn stated the mere addition of salt would not cause a vegetable to become pickled, although salt sets up conditions conducive to lactic acid fermentation.

Dr. Joslyn, who also testified in the case at bar, testified in C.D. 2476. His testimony was that pickling is a question of identifying how a product was processed. Technologically, the term as used in the United States refers to the production of the brine-cured fermented vegetables that would be marketed in edible form, usually a liquid packing medium. The court held in C.D. 2476, that on the record the imported dry packed Chinese vegetables were properly classified as vegetables, prepared or preserved, rather than as pickled vegetables.

Defendant has introduced into evidence a letter from the packer, Kanto Canning Co., Ltd., dated September 8, 1948, marked collective exhibit A, relating to the manufacturing process of Tokyo Zuke. Said letter states:

At the first stage of preparing, only radish is pickled in brine, but this is done for the purpose of adding slight taste of salt. After doing this, all vegetables, cut in suitable sizes, are put in a wooden barrel adding soy sauce, sugar and above-mentioned seasonings and left 24 hours in this condition to make a complexed taste and flavor.

Said letter concludes "Tokyo-Zuke is not cooked vegetables, nor pickled vegetables, but prepared vegetables."

Judge Donlon, in her decision in C. D. 2476, reviewed the leading cases dealing with classification of vegetables as prepared, preserved, pickled or packed in brine, salt or oil. There was no difference in rates between pickled vegetables and prepared vegetables prior to the Annecy protocol so that a distinction between these two classifications was not made prior to the *Mutual Supply Co.* case, *supra*. Any reference to such a distinction would be mere dictum.

In *Mutual Supply Co.*, *supra*, Judge Donlon held that Tokyo Zuke, Fukujin Zuke, and Takuwan Zuke, on the one-sided record before her, were pickled vegetables. In *Mutual*, defendant produced no evidence and did not even file a brief.

In *Chong Kee Jan Co., Inc.*, Judge Donlon held that on the record before her the Chinese vegetables prepared with salt and then dried did not qualify as vegetables pickled or packed in salt. Chung Choi, Jar Choi, Jar Tsoi, Mui Choi Sam, Chung Tsoi Tau, Chit Choi Pein and Chit Choi Poo were unlike the liquid pack that was said to be recognizable in the market place as pickles.

The common definitions of the term pickle cover a wide variety of fruit and vegetables preserved in vinegar and spices.

Webster's New World Dictionary, 1956 edition, defines the term—

*pickle* 1. any brine, vinegar, or spicy solution used to preserve or flavor food. 2. a vegetable, specifically cucumber, preserved in such a solution. . . .

1947 edition Encyclopaedia Britannica—

*pickle* In the wider sense the term "Pickle" is applied to any saline or acid preservative solution; in the narrower to vegetables preserved in vinegar. . . . Domestic pickles are made from small cucumbers, onions, cauliflowers, cabbages, mangoes, unripe walnuts and other fruits and vegetables by either steeping or boiling them in salt-brine and vinegar.

The New International Encyclopaedia, second edition, 1917—

*Pickles* Though the term "pickled" is applied to animal substances, such as beef, pork, and fish preserved in salt, yet pickles are generally

understood to be the various kinds of fruits or vegetables preserved in vinegar. Pickle making varies both as a domestic and as a commercial process. A common process is first to wash the articles intended for pickles in clean cold water and afterward to soak them for a few days in a strong solution of salt in water. They are next taken out, dried in a clean cloth, or drained, and then placed in the vessels intended to hold them, a few peppercorns, or any other suitable spice, being sprinkled in from time to time. When the vessel is so far filled that it will hold no more, boiling vinegar is poured in until it is full, and it is then tightly covered. Pickles are also made by allowing the vegetable to ferment in salt. Dill pickles are made in this way with dill tops to be added as a flavor. Except in the case of green walnuts and one or two other pickles, extreme softness is objectionable. . . . Many fruits are preserved by pickling, in which case no salt is used and sugar and common spices are added to the vinegar. Such are termed sweet pickles. Pears, plums, peaches, currants, cucumbers, and blackberries are particularly palatable when prepared in this way. The principal vegetables commonly preserved by pickling are cauliflowers, cabbage, cucumbers, gherkins, onions, tomatoes (green), young muskmelons (used for so-called mangoes), mushrooms, and nasturtium seeds. *Picalilli*, or Indian pickle, is a mixture of various vegetables, as cucumbers, onions, cauliflowers, and of species, pickled together. *Chow-chow* is a mixed pickle to which mustard is added. *Chutney* is a famous pickle of East India origin, containing many tropical fruits highly spiced and seasoned. Pickles contain much water, sometimes more than 90 per cent, and consequently have a low food value. They are used chiefly as condiments or as delicacies.

The Encyclopedia Americana, 1953 edition—

*Pickles.* Food that has been pickled, especially cucumbers that are preserved in vinegar. They are prepared by first washing in clean water, then soaking for a few days in brine, afterward drying them with a cloth or draining them, and finally putting them into the vessel in which they are intended to be preserved and pouring in boiling vinegar until the vessel is quite full. Before the vinegar is poured in, spices are added. When the vegetables that are to be pickled are naturally soft the vinegar is sometimes poured in cold. . . . The vegetables most often pickled are cabbage, cauliflower, gherkins (young cucumbers), French beans, onions, walnuts, mushrooms and nasturtiums. Chile peppers and sweet peppers, olives and capers are the most common kinds of imported pickles, and mangoes are occasionally used. . . .

From the definitions above quoted it will be seen that many forms of crisp pickles "cure" in a sealed container as a result of the action of the vinegar and spice mixture on a "raw" vegetable. These are commonly accepted and used throughout the United States as a pickle. The liquid pack in the case at bar would enable continuation of the cure of the imported merchandise in much the same way as would the vinegar mixture used domestically. This would account for the pickled taste of this product attested to in *Mutual Supply Co., supra*.

The defendant's expert witness attempted to limit the term pickle to the technicological form of a lactic acid fermentation product. How-

ever, defendant's witness as well as plaintiffs' witnesses acknowledged that to the layman a wide variety of fruits and vegetables preserved in vinegar, sugar and spices are also considered pickles and are used as such. The merchandise at bar is used in oriental menus in much the same manner as a pickle or relish is used in the American menus according to the testimony of all of the witnesses who had knowledge of its actual use.

This court distinguishes the merchandise at bar from the merchandise that was the subject of the decision in *Chong Kee Jan Co., Inc.*, *supra*. In *Chong Kee Jan Co.* the merchandise was prepared by salting for several days, as is the merchandise at bar. However, the merchandise in *Chong Kee Jan* was then dried thoroughly, in which form it was to be used; and the drying effectively stopped any pickling process while the product was in transit. The merchandise at bar, after salting, was sealed in cans in a soy sauce and spice mixture, which would not halt the pickling process. And the soy sauce provides a medium for the continued lactic acid fermentation.

On the above record this court finds the merchandise at bar should be properly classified as pickled vegetables. The instant protests are, therefore, sustained.

Judgment will be entered accordingly.